UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

HOME DESIGN SERVICES, INC.,

      Plaintiff,

v.                                 CASE NO. 3:09-cv-00140-MCR-MD

KEITH STEWART AND CHRISTINE
STEWART,

      Defendants.

_____/

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

Plaintiff, Home Design Services, Inc. ("HDS"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby submits this motion for summary judgment and memorandum in support.

### INTRODUCTION

This is a federal copyright action involving the infringement of a protected architectural work. HDS is the creator and owner of an original architectural work known as the HDS-2089. *Statement of Material Facts ("SOF")* ¶¶ 5-12. Defendants Keith and Christine Stewart infringed upon HDS's work by copying the HDS-2089 house plan and constructing two unauthorized houses from their copies of the HDS-2089. *SOF ¶28-36.* They acted as owner-contractors in constructing these houses. *Id.* As explained below, it is uncontroverted that Home Design is indeed the owner and creator of this plan, and has retained all rights to its copyright. *SOF ¶¶ 5-12.* As explained in more detail below, the Stewarts took and copied Plaintiff's design to ultimately build two houses located at 4112 Indian Trail, Destin, Florida and 4093 Burning Tree Drive, Destin, Florida.

In this case, two important items are clear. First, there is ample evidence that the Defendants had access to the HDS plan prior to the "drawing" of the nearly identical plans from which they built

the two infringing houses.  And, second, the Defendants can offer no specific evidence regarding the creation of their infringing designs that would establish any story of independent creation.  The floor plans themselves belie any such assertion.  As discussed in detail below, the infringing plans are practically a line-for-line copy of the HDS-2089.  *See, SOF ¶¶46(A)-(QQ) and 47(A)-(QQ).*

There is no doubt that the Defendants in this case had access to Plaintiff's design and copied that design.  Remarkably, the Defendants acknowledge that their design did not originate with them.  But, when the time came to draw plans for the first infringing house, they actively sought to copy a preexisting work through advertisements and model homes.  *SOF ¶38.*  The second house was simply based on the first house's plans.  *SOF ¶39.* The draftsman used by the Defendants for the first house acknowledged that it was his common and typical practice to begin a plan from a depiction of a preexisting work, by a photograph, advertisement or a flyer from a model home.  *SOF ¶40-41.* That draftsman relied upon customers to bring those depictions to him.  *Id.*  In stark contrast with the Defendants' acknowledgment that they sought to copy a preexisting work and their draftsman's common practice of copying, the Defendants have no proof of independent creation.  *SOF ¶42.*  They have not been able to produce any sketches they created or any red-line drawings they would have exchanged with the draftsman.  *SOF ¶43.*  In fact, the draftsman testified that this process never took place - contrary to his normal process of meeting multiple times  to adjust a plan to client preferences.  *SOF ¶44.*  He met once with Mr. Stewart to begin the project and a second time when Mr. Stewart picked up the plans, indicating that there was no need to engage in the normal back-and-forth creation process because the Stewarts brought him a preexisting depiction of the HDS-2089. *Id.*  The Stewarts' house plan follows the preexisting HDS-2089 to its most minute and tell-tale details.  *SOF ¶¶45-47(QQ).*  In this case, a picture truly is worth a thousand words.  The similarities

between the plans clearly demonstrate copying.   As such, many issues in the litigation are ripe for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when there are no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56; Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).   This standard is met if the moving party demonstrates that there is "an absence of evidence to support the nonmoving party's case." *Id.*

"[O]nce a moving party has sufficiently supported its motion for summary judgment, the non-moving party must come forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Irby v. Bittick*, 44 F.3d 949, 953 (11th Cir. 1995). "The non-moving party cannot rely solely on its pleadings, Fed. R. Civ. P. 56(e), it 'must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industry Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Accordingly, "summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action." *Celetex Corp.*, 477 U.S. at 327, *quoting* Fed. R. Civ. P. 1.

## PLAINTIFF'S PRIMA FACIE CASE

To prevail on its claim, HDS must show two elements: "(1) ownership of a valid copyright, and (2) copying of the constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Service*, 499 U.S. 340, 361 (1991).

I.   SUMMARY JUDGMENT SHOULD BE ENTERED THAT OWNS A VALID COPYRIGHT OF THE HDS-2089.

Certificates of registration constitute *prima facie* evidence of ownership of a valid copyright. *Arthur Rutenberg Homes, Inc. v. Maloney*, 891 F.Supp. 1560, 1566 (11th Cir. 1995), *citing* 17 U.S.C. § 410(c). When such a certificate is attached to a complaint, the Defendant must specifically challenge the validity of the copyright or ownership is conclusively established. *F.E.L. Publications, Ltd. v. National Conference of Catholic Bishops*, 466 F. Supp. 1034 (N.D. Ill., 1978).

Attached to the Amended Complaint and submitted alongside this motion is the certificate of registration for the HDS-2089. *SOF ¶¶5-12.* Home Design has also provided sworn testimony that it created and owns the HDS-2089 and that it has obtained the proper registration for that plan. *SOF ¶¶5-12.* Defendants can offer no evidence disputing HDS's ownership of the plan. The HDS-2089 was originally created around 1991 and has always been owned by HDS. *SOF ¶11.* The evidence is uncontradicted that HDS owns all right, title and interest in the HDS-2089 and the copyrights thereon and registrations thereof. Both the certificates of registration and the uncontradicted testimony are *independently* sufficient to establish ownership and Plaintiff is entitled to summary judgment on that element.

Defendants seem intent on arguing against the copyrighted nature of the plan because they do not find the 2089 to be "novel." This approach overtly contradicts the clear intent of Congress in passing the Architectural Works Protection Act and the long line of case law protecting house plans. *See, infra and 17 U.S.C. §101.* The plaintiff is not required to demonstrate that the work is unique and completely ground-breaking in design; it must only prove that its work is the result of

4

independent creation, that is, not the result of copying another's work.[1]  *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345 (1991).  Copyright protection for architectural plans is afforded to all architectural house plans and is not dependent upon how complex or extensive the house design is.[2]

 Summary judgment is appropriate on the issue of ownership because the Defendants can offer no evidence to dispute the originality of the HDS-2089.  Both the certificate of registration and the uncontradicted testimony of HDS's President, Jim Zirkel, are *independently* sufficient to establish originality.  There are no material disputed facts to contest this issue so summary judgment must be entered as a matter of law in HDS's favor on the issue of ownership.

## II. SUMMARY JUDGMENT SHOULD BE ENTERED ON THE ISSUE OF COPYING.

---

[1] 17 U.S.C. §101(a) delineates what is protected in two components: "it states what is protected. Second, it specifies the material objects in which the architectural work may be embodied". The protected work is the design of a building. The term "design" includes the overall form as well as the arrangement and composition of spaces and elements in the design.  The phrase "arrangement and composition of spaces and elements" recognizes that: (1) creativity in architecture frequently takes the form of selection, coordination, or arrangement of unprotectible elements into an original protectible whole; (2) an architect may incorporate new, protectible design elements into otherwise standard, unprotectible building features". *Id.*

[2] As one court put it, "[a]rchitectural structures and plans are subject to copyright protection ... regardless of how simple the design." *Richmond Homes Mgmt., Inc. v. Raintree, Inc.*, 862 F. Supp. 1517, 1523 (W.D.Va. 1994), *and cases cited therein, rev'd on other grounds*, 66 F.3d 316 (4th Cir 1995).  For this reason, legions of courts have found copyright infringement when someone purloins a "stock" or "production" type house design.  *See, e.g., KB Homes v. Antares Homes, Ltd.*, 2007 WL 1893370, *7 (N.D.Tex. June 28, 2007)(holding that home plans at issue had "minimal degree of protection"); *Patriot Homes, Inc. v. Forest River Housing, Inc.*, 548 F. Supp. 2d 647, 651 (N.D.Ind. 2008)(modular home plans entitled to copyright protection); *Arthur Rutenberg Corp. v. Downey*, 647 F. Supp. 1214, 1215 (M.D.Fla. 1986)(similar result involving production builder home)*; Lindal Cedar Homes, Inc. v. Ireland, et al.*, 2004 WL 2066742, *2 (D. Or. Sept. 14, 2004)(The "originality of a home design is in the selection of its elements and in the coordination and arrangement of those elements into a design. Although the underlying unoriginal component parts of a house plan are not subject to protection, a designer's selection and arrangement of these parts, where independently made, is original and therefore copyrightable"); *Eales v. Environmental Lifestyles, Inc.*, 958 F.2d 876, 880-881 (9th Cir. 1992)(the layout and sizing of home features is enough to gain copyright protection), *abrogated on other grounds, Hunt v. Pasternack*, 179 F.3d 683 (9th Cir. 1999).

**A.**    ***In an Architectural Works Case, Copying May Be Proven by Direct or Indirect Evidence.***

In copyright infringement cases, the element of "copying" can be proven by either direct or indirect evidence. *Donald Frederick Evans & Associates, Inc. v. Continental Homes, Inc.*, 785 F.2d 897, 904 (11th Cir. 1986). Courts allow "copying" to be proven indirectly because direct evidence is often impossible to find as an infringer does not often leave behind direct evidence of its crime or admit to it. *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 829 (11th Cir.1982). A plaintiff can prove copying indirectly by showing 1) that the infringer had access to the copyrighted work and, 2) that the alleged infringing work is "substantially similar" to the copyrighted one. *Id.*

**B.**    ***Under the Indirect Test, Substantial Similarity Is Determined by Comparing the Total Concept and Feel of Two Works to Inferentially Determine Whether Copying Occurred.***

In the indirect test for copying, the analysis of "substantial similarity" is an overall comparison of two works. The accused work is compared to the copyrighted work and, if "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work", the test for "substantial similarity" is met. *Original Appalachian,* 684 F.2d at 829. In architectural works, the protection of the work lies with the protected arrangement and coordination of spaces, elements, and building components, as well as the total selection and arrangement of those items. *Intervest Const., Inc. v. Canterbury Estate Homes, Inc.,* 554 F.3d 914, 920 (11th Cir. 2008). The totality of the selection and arrangement of spaces, elements and components must be compared when making a determination of substantial similarity. *Intervest*

6

*Const., Inc. v. Canterbury Estate Homes, Inc.,* 554 F.3d 914, 920 (11th Cir. 2008).

Courts have been very careful to point out that exact reproduction or near identity is not necessary and that, in this context, the basic test for "substantial similarity" is one of similarity and *not* one of differences. *Atari, Inc. v. North Am. Philips Consumer Elec. Corp.*, 672 F.2d 607, 618 (7th Cir.), *cert. denied,* 1568 459 U.S. 880, 103 S.C. 176, 74 L.Ed.2d 145 (1982); *Comptone Co. v. Rayex Corp.*, 251 F.2d 487, 488 (2d Cir. 1958). As Judge Learned Hand put it, there is substantial similarity where "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960). In this general determination as to whether copying has occurred, it is the presence of similarities which determines whether infringement exists and the differences between works are not to negate infringement unless they so outweigh the similarities that the similarities can only be deemed inconsequential within the total context of the copyrighted work. *Arthur Rutenberg Homes, Inc. v. Maloney*, 891 F. Supp. 1560, 1567-68 (M.D. Fla. 1995). The "substantial similarity" analysis does not turn on isolated similarities or dissimilarities in the two works, but rather on the "total concept and feel" of the works as they would be perceived by an audience of reasonable laypersons. *Sid & Marty Krofft Television Productions, Inc. v. McDonalds Corp.*, 562 F.2d 1157, 1166-1177 (9th Cir. 1977); *Buc International Corporation v. International Yacht Council Limited*, 489 F.3d 1129, 1146 (11th Cir. 2007).

C.   ***Summary judgment should be granted on the issue of Indirect Copying (Access and Substantial Similarity).***

Because evidence of direct copying is often unavailable, the courts have established an

alternative test which allows copying to be established circumstantially if the plaintiff can demonstrate that the Defendants had "access" to the copyrighted work and that the works are "substantial similarity." *See Id at* 904; *Benson v. Coca-Cola Co.*, 795 F.2d 973, 974 (11th Cir. 1986), *reh'g denied*, 801 F.2d 404 (11th Cir. 1986)(*en banc*).  To prove access, a plaintiff does not have to show that the defendant actually viewed the copyrighted works, nor does the plaintiff have to prove the defendant had access to the actual technical drawings described in a copyright registration. *Jenkins v. Jury*, 2009 WL 1043965 *4 (M.D.Fla. 2009); *Donald Frederick Evans & Assocs., Inc. v. Continental Homes, Inc.*, 785 F. 2d 897, 904 (11th Cir. 1986).   Rather, a copyright plaintiff may meet his burden of proof on this element by simply showing that the defendant had a "reasonable opportunity to view" or "opportunity to copy" the allegedly infringed work. *Autoskill, Inc. v. National Educ. Support Systems, Inc.*, 994 F. 2d 1476, 1490 (10th Cir. 1993), citing 3 Nimmer on Copyright § 13.02[A] & n. 5, at 13-15 to -16; see also, *Robert R. Jones Assoc. Inc. v. Nino Homes*, 858 F.2d 274, 277 (6th Cir. 1988)(concluding "[a]ccess merely means an opportunity to vew the protected material").

Importantly - because a copyright infringer does not typically admit to the crime - reasonably widespread use or publication of a copyrighted work creates a presumption of access and reasonable opportunity to view. *Acuff-Rose Music, Inc. v. Jostens, Inc.*, 988 F. Supp. 289, 293 (S.D.N.Y. 1997); *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988 (2d Cir. 1983); *Fred Fisher, Inc. v. Dillingham*, 298 F. 145, 146 (S.D.N.Y. 1924); *Cholvin v. B. & F. Music Co.*, 253 F.2d 102 (7th Cir. 1958).

**D.**    ***Summary Judgment Should Be Granted on the Issue of Access.***

In this case, the element of access is undisputable. The first infringing plan was created in August of 1995. *SOF ¶30.* By that date, the 2089 was being published nationally and in the area in which the Stewarts lived and built the first house. *SOF ¶ Zirkel Dec. at ¶13-24.* The 2089 was available through HDS's own marketing efforts and available through the efforts of a third-party publisher. *SOF ¶13-24.* HDS had featured the 2089 in two separate magazines (Spring of 1994 and Issue I of 1995). *SOF ¶17.* Prior to the Stewarts' houses, a multitude of buildings in the Destin, Ft. Walton Beach, Pensacola and Panama City area were on a mailing list used by HDS called the PK Marketing List. *Id. At ¶20.* Prior to the Stewarts' first build, that list was repeatedly used to market the 2089. *Id.* Any builder on that list and any builder who was a member of the Florida Builders Association was mailed multiple magazines that depicted the 2089 in the early 1990s. *Id.* The HDS magazines were also available at Lowe's and Home Depot Stores nationwide. *SOF ¶19.* The Stewarts admit to looking at several magazines prior to the design of the first infringing house. *SOF ¶38.*

The 2089 has been sold and built approximately a thousand times throughout the United States and Florida and particularly in the area in which the Stewarts built the two houses that are the subject of this case. *SOF ¶18.* In addition to the general distribution set forth above, the 2089 was lawfully licensed and built repeatedly around the area in which the Stewarts lived and constructed the infringing houses. *SOF ¶11.* This is the same area in which the Stewarts admit to touring houses under construction and model homes. *SOF ¶38.*

Such widespread publication creates a presumption of access. There is an undisputed factual basis to establish that the Stewarts had a "reasonable opportunity to view" the 2089 both by the neighboring homes and HDS's widespread marketing efforts.    Based on the foregoing uncontroverted evidence of both widespread dissemination and local exposure, this Court should

enter summary judgment finding, as a matter of law, that access to the 2089 exists.

### E.   *Summary Judgment Should Be Granted on Substantial Similarity.*

HDS should likewise be granted summary judgment on the issue of substantial similarity between the plans, the second prong of the method to prove copying indirectly. When using the indirect proof test of substantial similarity to establish copying, the "copying" must be such that the copier "succeeded to a meaningful degree". *Leigh,* 212 F.3d at 1214. Summary judgment should be entered, finding that the Stewart house plans are substantially similar to the HDS-2089.

In this case, the plans at issue are practically identical. *SOF ¶¶ 45, 46(A)-(QQ) and 47(A)-(QQ).* The only way a fact-finder could discount the overall similarity (and near identical nature of the plans) would be to disregard the plans as a whole and focus solely on what few minor changes were made to the HDS plan.

The plans themselves demonstrate overwhelming similarity. In comparing the Stewarts first plan (the house at 4093 Burning Tree Drive, Destin, referred hereinafter as "House One") to the HDS-2089, the following observations were made: The flow of the designs is the same. *SOF ¶46(A).* The organization of each room and the placement of each type of room is the same. *SOF ¶46(B).* The organization and traffic patterns between the rooms is the same. *SOF ¶46(C).* The arrangement of the rooms and their elements are the same. *SOF ¶46(D)*. The overall proportions of the plan are the same. *SOF ¶46(D).* The composition of architectural elements are the same. *SOF ¶46(E).* The compositional strategy of orthogonal rooms with some 45 degree angles is the same. *SOF ¶46(F).* The distinctions between public and private spaces is the same. *SOF ¶46(G).*

Were an average observer to compare houses built from the HDS-2089 with the House One plan, they would find a litany of identical features and very, very close similarities. *SOF ¶46(H).* In entering the foyer, an observer will find that the entries of the House One plan and HDS-2089 are in the same location and are of the same size and proportion. *SOF ¶46(I).* The foyers of the plans are equally grand and create an equivalent feeling upon entry, providing the same view into the

family room upon entry. *SOF ¶46(J)*. Each room in the two plans has the exact same relationship to the other rooms. *SOF ¶46(K)*. Both Plan One and the 2089 foyer open with double doors. *SOF ¶46(K)*. The placement of the dining rooms, garage, living rooms, family room, breakfast nook, master bedroom, master bathroom, walk in master-bedroom closet, kitchen, laundry room, second bedroom, third bedroom, fourth bedroom, second bathroom, third bathroom and rear porch are identical in each plan. *SOF ¶46(L)-(M)*. The relationship between each room is identical, as are the proportion and use of space between those rooms. *SOF ¶46(N)*.

Not only is every single door placed in the exact same location as the 2089, all of the interior doors even swing the same direction as that depicted in the 2089. *SOF ¶46(O)*. In addition, remarkably, the type of door used at each space is the identical between the plans. *SOF ¶46(P)*. Every time a swing door is used in the 2089, a swing door is used in the House One Plan. *SOF ¶46(Q)*. The use of a sliding glass door on the short wall between the master bedroom and the covered patio is the same in each plan, as is each plan's use of a three panel sliding glass entryway that collapses into a pocket between the family room and covered patio. *SOF ¶46(R)*.

Certain unique design similarities in the 2089 and the House One plans portray unusual design choices that indicate the House One plan was copied from the 2089. *SOF ¶46(S)*. The contours of the master bedroom of each plan are unusual in layout and shape, but are identical between the plans. *SOF ¶46(T)*. The master bedroom of both plans traces the same strange outline where the breakfast nook contour creates an angled intrusion into front left corner of the master bedroom. *SOF ¶46(U)*. This creates the same awkward condition for furniture placement in both the HDS-2089 and the House One plans. *SOF ¶46(V)*. The House One plan is even identical in its elongated and continuous window placement on the back wall of the master bedroom. *SOF ¶46(W)*.

Both the House One design and the 2089 have doorways leaving the master bedroom into the porch area adjacent to the breakfast nook. *SOF ¶46(X)*. A solid wall is present in both plans separating the same rectangular master-bedroom, walk-in closet from the bedroom. *SOF ¶46(Y)*.

11

Access is only provided to the walk-in closet from the master bath. *SOF ¶46(Z)*. The same angled doorway appears on both plans separating the bath from the master bedroom. *SOF ¶46(Z)*. The master bathroom features (double sinks, tub, linen closet, shower, and toilet) are placed in the very same location in both plans. *SOF ¶46(AA)*. The master bathroom design of both the 2089 and the House One plan is excessive and awkward in width. *SOF ¶46(BB)*. Even the toilet space - which awkwardly extends back behind the otherwise continuous bathroom wall is the same, as is the end-of-hallway storage space behind that space. *SOF ¶46(BB)*.

The three sided contour of the breakfast nook is copied. *SOF ¶46(CC)*. This results an unusual mis-alignment of the breakfast nook's wall with the kitchen wall. *SOF ¶46(CC)*. The porch may be accessed through the same three points in both plans. *SOF ¶46(DD)*.

An inspection of each room of the House One Plan and HDS-2089 plans reveals that the arrangement of these features was directly copied. *SOF ¶46(EE)*. The placement and type of closets used are exactly the same in Bedrooms 2, 3 and 4. *SOF ¶46(FF)*. The linen closet is of the exact same proportion and placement in the bathroom placed between bedroom 2 and 3. *SOF ¶46(GG)*. The same is true of the closets at the back of the house. *SOF ¶46(HH)*. Both the HDS-2089 and the House One plans have the same tub/shower, toilet and sink features in both of the additional bathrooms. *SOF ¶46(II)*. The fireplace placement and shelving in the living room are identical. *SOF ¶46(JJ)*. The bend to the kitchen features is the same as it angles in from the living room toward the breakfast nook. *SOF ¶46(KK)*. Even the placement of the sinks and stove in the kitchen is the same. *SOF ¶46(LL)*. Entries between the living room to foyer to dining room to kitchen are the same in each plan. *SOF ¶46(LL)*. Both plans also have the same entry from the garage, through the laundry room, bringing the person entering to the master bedroom door. *SOF ¶46(MM)*. The plans themselves reveal a host of identical features and substantially similar designs.

The elevations of the respective designs use the same placement, size and character of the massing. *SOF ¶46(OO)*. Since the placement of features is largely dependent upon the arrangement

of the interior features, these elevations have many similarities. *SOF ¶46(PP)*. Almost all of the windows are in the same location and are of roughly the same size. *SOF ¶46(QQ)*.

The House Two plan (for the second house built by the Stewarts at 4112 Indian Trail, Destin) shows almost all the same similarities and identical features as that between the 2089 and the House One plan. *SOF ¶¶46(A)-(QQ) and 47(A)-(QQ)*. Since the comparison is the same, due to considerations of space, that comparison will not be reiterated in full here. The Court is referred to that comparison in Plaintiff's Statement of Facts submitted alongside this brief.

In this case, the old adage that a picture really does speak a thousand words holds true. Almost every feature in the versions of the floor plans used for the infringing houses was taken directly from the HDS plan. Almost every single substantive detail from the infringing plans is identical to the content of the HDS-2089.

The Copyright Act is meant to provide protection to the creator of an architectural work from the unlawful copying and exploitation of its work. Defendants cannot rely on a short list of minor changes made to the plan to hide their obvious copying. A plagiarist may not evade liability by pointing out the portions he did not copy. *Kramer*, 783 F.2d at 445; *Ronald Mayotte & Assocs. v. MGC Bldg. Co.*, 36 U.S.P.Q.2d 1793 (E.D. Mich.1995); *John Wieland Homes*, 2004 WL 2108675 * 5. The law does not reward a thief or infringer that has attempted to disguise his copying.

Too many features are identical between the HDS plan the House One and House Two designs to hide the plans' origin. These plans clearly meet the standard for substantial similarity. Summary judgment should be entered against the Defendants on indirect copying (access and substantial similarity).

**F.      *Summary Judgment Should Also Be Granted on the Issue of Striking Similarity.***

Even if the question of access was in doubt, which in this case it is not, a Plaintiff may prove copying by demonstrating the original work and the infringing work are "strikingly similar." *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1253 (11th Cir. 2007). While the question of substantial

similarity is customarily one of fact, summary judgment remains available and is appropriate where the degree of substantial similarity is overwhelming. *HRH Architects, Inc. v. Lansing*, 2009 WL 1421217 *6. Were it is clear that the offending plan is a knock-off, summary judgment is appropriate. *Id., see e.g. Axelrod & Cherveny Architects, P.C. v. Winmar Homes,* 2007 WL 708798 (E.D.N.Y. 2007); *Nilson v. McGlaughon* 2004 WL 906322 (E.D.N.C. 2004); *Bonner v. Dawson*, 2003 WL 22432941 (W.D.Va. 2003). Striking similarity exists were the proof of similarity in appearance is so striking that the possibilities of independent creation or coincidence, as a practical matter, is precluded. *Corwin,* 475 F.3d at 1253.

The plans at issue in this case clearly meet the lessor burden of substantial similarity where access is demonstrated. In addition, given the absence of almost any difference between the subject plans, a finding of copying based solely on a finding of striking is appropriate in this case on summary judgment.

> **G.     *In Addition to a Finding That the House Two Plan Is Substantially and Strikingly Similar to the HDS Plan, Summary Judgment Should Be Granted on the Issue of Copying Because Defendants Infringed upon Hds's Exclusive Rights to Create and Use Derivative Works.***

The Defendants cannot escape liability by pointing to a handful of changes that were made between the House One plan and the House Two plan when infringing upon the HDS plan . To allow such a result would reward a clever thief. <u>The variations of the plan remain the property of HDS.</u>

The House Two house does not differs from its predecessor, House One, in any meaningful way. The only apparent difference appears to be the addition of a toilet area between the garage and the master bedroom hall, which shortens the preexisting laundry area. These few changes however, do not change the nature of the plan and summary judgment should be appropriately entered for the Plaintiff on the issue of copying. The plan still meets the standard of substantial and striking similarity as discussed above.

Even though there was a slight alteration to the first version of the infringing plan, the Copyright Act does not allow the Defendants to escape the consequences of their unlawful copying. Copyright law clearly states that derivative works are the exclusive property of the copyright holder. *17 U.S.C.A. §§ 101, 106(2); see also Stewart v. Abend*, 495 U.S. 207, 221 n.3 (1990); *Spinmaster, Ltd. v. Overbreak, LLC*, 404 F.Supp.2d 1097, 1106 (N.D. Ill. 2005); *eBay Inc. v. MercExchange, LLC*, 126 S.Ct. 1837, 2006 (2006) (stating that the right to exclude others from using a copyrighted property is intrinsically linked to the copyright owner's exclusive right to use). The Copyright Act broadly defines a "derivative work" as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed or adapted." 17 U.S.C. § 101.

The Stewarts have admitted that the House Two plan was simply an altered version of the House One plan. *SOF ¶39.* If the House One plan is found to be a copy, the House Two plan is necessarily an infringement since it is an admitted derivative work.

"[T]o constitute a violation of section 106(2), the infringing work must incorporate *a portion of* the copyrighted work in some form." H.R.Rep. No. 94-1476, at 62 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5675, (emphasis added). Such infringement is then actionable under the Copyright Act. *Central Point Software, Inc. v. Nugent*, 903 F.Supp. 1057, 1060 (E.D.Tex. 1995) (granting summary judgment to plaintiffs on their copyright infringement claim where they registered their copyrights in certain versions of computer programs and defendants copied subsequent versions that were derived from the registered works); *Lamb v. Starks*, 949 F.Supp. 753, 755-56 (N.D.Cal. 1996) (holding that a prima facie case of copyright infringement had been established where defendant copied plaintiff's unregistered trailer that contained portions of a movie in which plaintiff held a registered copyright); *Gracen v. Bradford Exchange*, 698 F.2d 300 (7th Cir. 1983) (lack of authorization by the copyright holder to produce and use a derivative work constitutes

infringement).

In this case, as summarized above, there is proof of copying. The minor changes made to the HDS plan do not allow the Defendants to escape liability, since the modification of the plan and its use is a right solely held by the copyright owner. Summary Judgment should be entered for Plaintiff on the issue of copying.

**IV.    HDS Is Entitled to Summary Judgment On the Issue of Actual Damages.**

Damages available in a copyright infringement case are governed by 17 U.S.C. § 504(b), which states:

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

Plaintiff's actual damages are $1,125 for lost licensing fees. *SOF* ¶*26*. The licensing fee for the use of a 2089 set of plans for each location for construction was $495 in 1995 when the Stewarts constructed House One and $630 for the year 1998 when the Stewarts constructed House Two. *SOF* ¶*26*. There is no contradictory evidence as to this total figure of actual damages and, as such, summary judgment should be entered on this issue.

**V.    HDS Is Entitled to Summary Judgment on Revenues.**

In cases of architectural infringement, the sales price derived from selling an infringing home is considered gross revenue under §504(b). *Arthur Rutenberg Corp. v. Dawney*, 647 F.Supp 1214 (M.D. Fla. 1986); *Robert R. Jones Associates, Inc. v. Nino Homes*, 686 F. Supp 160 (E.D. Mich.1987); *Van Brouk & Assocs., Inc. v. Darmik, Inc.*, 329 F. Supp. 2d 924, 937 (E.D. Mi. 2004), *quoting Nelson-Salabes, Inc., v. Morningside Development, L.L.C.*, 284 F. 3d 505, 511-12 n. 9 (4th Cir. 2002).

Thus, plaintiff has the burden to prove only the gross revenue of the infringer for the acts of infringement. 17 U.S.C §504(b). Plaintiff meets its burden of proof and establishes a prima facie case on damages when it establishes the number of infringing items and their retail price. *In Design v. K-Mart Apparel Corp.*, 13 F.3d 559, 564 (2nd Cir. 1994).

In the present case, it is undisputed that Defendants received $550,00 as gross revenues through the construction and sale of the two unauthorized houses ($240,000 for the house at 4093 Burning Tree Drive and $310,000 for the house at 4112 Indian Trail). *SOF ¶48-50*. These admissions are binding and Defendants' gross revenue on each home is now an undisputed fact. Summary judgment should be entered in Plaintiff's favor on this element of damages. Summary judgment should be granted on the issue of revenues, setting the amount at $550,000.

**VI.   Summary Judgment Should Be Entered Against Defendants' Affirmative Defenses.**

   ***A.     Summary Judgment Should Be Entered against Defendants' Statute of Limitations Defense. (Affirmative Defense # 3).***

Nothing in the record indicates that HDS could be barred by the statute of limitations. The Copyright Act states: "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). The Eleventh Circuit follows the discovery rule to determine when a copyright claim accrues. A copyright claim accrues "when the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his rights." *James W. Ross, Inc. v. Cecil Allen Construction, Inc.*, 2004 WL 1146104, at * 2 (M.D. Fla.), *quoting Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004)(additional citations omitted).

The Defendants can offer no evidence that Home Design knew or should have known about the Defendants' infringing activities for more than three (3) years before it filed its lawsuit. To the contrary, Plaintiff's owner, James Zirkel did not view or know about the infringing house until he viewed it on a trip to Destin on April 5, 2006 and April 6, 2006. *SOF ¶51.* As the record of these

proceedings demonstrates, Plaintiff filed suit well within the three years when it discovered the unauthorized use of its plan. Summary judgment is appropriate on this defense.

**B.    *Summary Judgment Should Be Entered against Defendants' Laches, Waiver, Estoppel and Unclean Hands Defenses. (Affirmative Defenses # 4 and 6).***

The Doctrine of Laches and (and other equitable defenses) stand for the general proposition that equity aids the vigilant and not those who slumber on their rights. BLACK'S LAW DICTIONARY (7th ed.). Defendants can provide no factual basis to prove they relied upon any assertion, inaction or action on the part of HDS that would be sufficient to give rise to an equitable excuse for their infringing activities. To the contrary, HDS sought to actively protect its rights by filing suit after discovering the infringements at issue.

"Furthermore, a court may not apply the doctrine of laches to shorten the statutory limitations period established by Congress for claims brought under the Copyright Act." *Advance Magazine Publishers, Inc. v. Leach*, 466 F.Supp.2d 628, 636 (D.Md.2006)( citing 17 U.S.C. §507(b)); *Lyons Partnership, L.P. v. Morris Costumes, Inc.,* 243 F.3d 789, 798 (4th Cir. 2001). By law, therefore, the defenses based in equity fail.

To avail themselves of an estoppel defense, Defendants must prove: (1) that HDS had actual or constructive knowledge of the truth of a matter; (2) that HDS misrepresented or concealed material facts to defendants; (3) that HDS intended or expected defendants to rely upon those misrepresentations or concealments (4) that defendants did so act; and (5) that defendants' reliance was both reasonable and detrimental. *Tavory v. NTP, Inc.*, 495 F.Supp.2d 531, 537 (E.D. Va. 2007).

There is no evidence whatsoever that Defendants acted to infringe HDS's copyrighted work because of HDS's actions. There is no evidence that the Stewarts chose to infringe the copyrighted work because of something that HDS did. When HDS discovered the infringing conduct, it acted to protect its rights in the work within the statute of limitations. Therefore, Defendants' laches, equitable estoppel, waiver, and unclean hands defenses thus fail as a matter of law and for lack of

a factual basis.  Summary judgment is appropriate on these issues.

> ### C.  Summary Judgment Should Be Entered against Defendants' Express or Implied License, Ratification and Good Faith Purchaser Defenses.  (Affirmative Defenses #1, 2 and 5).

HDS is not aware of any legal authority supporting a defense of the "good faith purchaser" in the copyright context.  Admittedly, the existence of an agreement, or license, authorizing the use of a copyrighted work is an affirmative defense.  Such licenses are express or implied, exclusive or non-exclusive.  *See* 17 U.S.C. §204(a).  There is no evidence whatsoever in this case proving the existence of an express license or an implied license from HDS.  And there is no evidence whatsoever that HDS ever acted to ratify the Stewarts' past unlawful use of its home design.

Implied licenses will only be found in 'narrow' circumstances.  *See, e.g.,SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc.*, 211 F.3d 21, 25 (2d Cir. 2000).  In order to establish an implied license a defendant must plead and prove: 1) that the alleged implied licensee requested the creation of the work; 2) that the implied licensor and creator made that work specifically for the implied licensee and actually delivered it to the licensee and 3) that the creator and implied licensor actually intended that the licensee copy and distribute the work and that it be used on a particular project.  *I.A.E., Inc v. Shaver*, 74 F. 3d 768, 776 (7th Cir. 1996); *Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 558-559 (9th Cir. 1990); *Nelson-Sabales, Incorporated v. Morningside Development, L.L.C.*, 284 F. 3d 505, 514-515 (4th Cir. 2002).  Again, no evidence satisfying any of these elements is present here.  Thus, to the extent these "good faith purchaser," "ratification" and "license" defenses are intended to assert some type of a license was granted by HDS to use the 2089 (or, for that matter, any of its plans), there isn't a scintilla of evidence supporting this theory.  Accordingly, summary judgment should be entered on these defense.  *See McIntosh v. Northern California Universal Enter. Co.*, 2009 WL 3736146, *12-17 (E.D.Cal. Oct. 30, 2009)(entering summary judgment on implied license defense); *Thomas M. Gilbert Architects, P.C. v. Accent Builders & Developers, LLC,* 629 F. Supp. 2d 526, 532-33 (E.D.Va. 2008)(same in

architectural infringement case).

### D.     Summary Judgment Should Be Entered Against Defendants' Innocent Infringer Defenses.  (Affirmative Defenses #2, 7, and 12).

Defendants appear to raise, as their second, seventh and twelfth Affirmative Defenses, the theory that Plaintiff's claims are defeated by way of innocent infringement under the Copyright Act. Defendants coin these defenses "Good Faith Purchaser," "Lack of Bad Faith" and "Innocent Infringer Defenses." Defendants incorrectly state these innocent infringement are affirmative defenses. The only application the Defendants' intent could have is under 17 U.S.C. § 504(c), a section that refers to innocent infringement as a mitigating factor with regard to awards of *statutory* damages. *See* 17 U.S.C. § 504(c). Plaintiff has elected not to seek statutory damages in this case and the intent of the Defendants has no bearing on any issue here. It is well-accepted law that innocent infringement is *never* a defense to *liability* under the Copyright Act. *See generally* 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.08 (1983 & Supp.2002); *Buck v. Jewell-La Salle Realty Co.*, 283 U.S. 191, 198 (1931)("Intention to infringe is not essential under the act."); *American Press Assn. v. Daily Story Publg. Co.*, 120 F. 766, 769 (7th Cir. 1902)("It is not material . . . that the appellant . . . was not aware that the story was protected by copyright. It published it at its peril and ignorance will not avail."), *appeal dismissed*, 193 U.S. 675 (1904); *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., Inc.,* 807 F.2d 1110, 1113 (2d. Cir. 1986)(Motive or intent is irrelevant to establishing liability for copyright infringement, for "even an innocent infringer is liable for infringement ... intent or knowledge is not an element of infringement."); *Bridgeport Music, Inc. v. 11C,* 154 F.3d 1330, 1335 (M.D. Tenn. 2001)(Liability for copyright infringement does not turn on one's mental state because it is a form of strict liability.); 4-13 *Nimmer* § 13.08 (2009)(There is no such thing as an innocent infringer defense to copyright infringement.). Accordingly, innocent intent is not a recognized affirmative defense to liability so summary judgment should be entered against the Defendants on affirmative defenses 2, 7 and 12.

**E.      *Summary Judgment Should Be Entered Against Affirmative Defenses #8(Invalidity of Copyright), #9(Copyright Not Original), 10(Lack of Substantial Similarity) and 11(Failure to Timely Register Copyright).***

Plaintiff's prima facie case of copyright infringement consists of proving two elements: "(1) ownership of a valid copyright, and (2) copying of the constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. at 361.  In Affirmative Defenses #8, 9, 10 and 11, Defendants attempt to negate these elements by arguing that the copyrights are not valid or original or the works are not substantially similar.

These defenses fail, as a matter of law, because they do not fit the legal definition of an affirmative defense.  "A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense." *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir.2002) (citing *Flav-O-Rich v. Rawson Food Service, Inc.* (*In re Rawson Food Service, Inc.*), 846 F.2d 1343, 1349 (11th Cir.1988)).  As the Eleventh Circuit explained in *Rawson*, a defense which merely points out a proposed defect in the plaintiff's prima facie case is not an affirmative defense. *Id.*; *see also,* 2A J. Moore and J. Lucas, Moore's Federal Practice ¶¶ 8.27[1], 8.27[4] (2d ed.1985)(An affirmative defense raises matters extraneous to the plaintiff's prima facie case); 5 C. Wright and A. Miller, Federal Practice and Procedure § 1270, at 289 (1969)(defenses which negate an element of the plaintiff's prima facie case are excluded from the definition of affirmative defense in Fed.R.Civ.P. 8(c)).

HDS has provided uncontradicted testimony that it is the owner and creator of the HDS-2089 and that these are original architectural house plans independently created by Zirkel. *Supra*. Defendants have no evidence to suggest otherwise.  Accordingly, these defenses should be stricken.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that summary judgment be granted on the issues of ownership, copying (access, substantial similarity, striking similarity and through derivative works,) actual damages, revenues, and against the aforementioned affirmative defenses.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on May 21, 2010, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:  Edward P. Fleming, Esq., McDonald, Fleming, Moorehead, 25 W. Government Street, Pensacola, FL 32502.

<div style="margin-left:40%">

<u>s/Kirt R. Posthuma</u>
Jon D. Parrish, Esq.
Florida Bar No. 984329
Kirt R. Posthuma, Esq.
Florida Bar No. 0036372
Parrish, Lawhon & Yarnell, P.A.
3431 Pine Ridge Road, Suite 101
Naples, Florida 34109
Ph 239/566-2013; Fax 239/566-9561

</div>

22