# UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

**HOME DESIGN SERVICES, INC.,**

    **Plaintiff,**

v.                                                      Case No. 3:09cv140-MCR/MD

**KEITH STEWART and CHRISTINE STEWART,**

    **Defendants.**

_____/

## O R D E R

In this case, Plaintiff Home Design Services, Inc. ("HDS") has sued Defendants Keith Stewart and Christine Stewart for one count of copyright infringement under federal law. *See* 17 U.S.C. § 101, *et seq.* Pending before the court is a motion for summary judgment filed by HDS (doc. 67), and which defendants oppose (doc. 76). The court, having fully considered the record and the arguments of the parties, concludes that, with the exception of certain affirmative defenses, material issues of fact preclude summary judgment in this case.

**Background**

HDS is a residential design firm engaged in the business of designing and selling house plans. James Zirkel is its owner and president. Zirkel alleges that he created and owns the copyright in a house plan known as HDS-2089; Zirkel states in his affidavit that he created the plan in 1991. The copyright registration for the plan was originally obtained in 2000, designating the work as a technical drawing, and HDS filed a supplementary registration in 2004, correcting the "nature of authorship" to designate it as an architectural work. The basic design of HDS-2089 is a split floor plan – a design in which the living space is in the center of the home, the master bedroom on one side of the living space,

and secondary bedrooms on the other side. Zirkel does not claim to have created the split floor plan itself, which he admits is a common design. Rather, he claims copyright protection in the particular arrangement of the floor plan as a whole, "the architectural works of the plan itself," and the front elevation. (Doc. 77-3, at 25; Zirkel Depo. at 79.) But he admits that "the individual components of that plan" are not unique or original. (Doc. 77-3, at 33; Zirkel Depo. at 120.) According to Zirkel, HDS published artist concepts of the plan in various magazines and catalogues prior to 1995, attempting to solicit customers to purchase the detailed plans. Zirkel testified that the artist concept published by HDS lacked the construction details necessary to build a home, although it would be possible to take the picture, fill in the dimensions, and then build a house without authorization.

Defendants state they collected ideas for the home they wanted to build from viewing various home designs and visiting houses. After compiling many ideas, Keith Stewart sketched a basic floor plan and hired a draftsman, John Krauss, to draw up plans and working construction documents for the defendants' home. Krauss created the documents and sold them to the Stewarts for $469. With these plans, defendants built their first home on Burning Tree Drive in 1995. They subsequently sold that home and, in 1998, built a second, larger house located on Indian Trail based on the same plan. According to the defendants, neither of them ever reviewed HDS's publications prior to this lawsuit, and they did not copy the HDS-2089 house plan.

Zirkel discovered the Stewarts' two homes after a fellow designer, Dan Sater, reported to Zirkel that he had seen homes in Destin, Florida, that might be infringing on Zirkel's copyrights. Others had also made similar reports to HDS. Zirkel traveled to Destin on April 5 and 6, 2006 (which was sometime within a year of Sater's report), to investigate and discovered the two homes built by defendants, which Zirkel said he noticed because they looked similar to his design. The company, however, had no record that the defendants had purchased the design. HDS filed this lawsuit on April 1, 2009, alleging one count of copyright infringement of the HDS-2089 house plan. HDS now moves for summary judgment, which the defendants oppose.

**Discussion**

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, "shows that there is no genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Martin v. Brevard County Pub. Sch.*, 543 F.3d 1261, 1265 (11th Cir. 2008). Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir.1995). An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court will not make credibility determinations or weigh the evidence presented on summary judgment. *Frederick v. Sprint/United Mgm't Co.*, 246 F.3d 1305, 1311 (11th Cir. 2001). In the copyright context, courts have hesitated to make determinations on summary judgment as to infringement or non-infringement because of the subjective nature of the determination. *See Peter Letterese and Assocs., Inc. v. World Inst. of Scientology Enters., Int'l*, 533 F.3d 1287, 1302 (11th Cir. 2008). "However, non-infringement may be determined as a matter of law on a motion for summary judgment, either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work or because no reasonable jury, properly instructed, could find that the two works are substantially similar." *Herzog v. Castle Rock Entm't,* 193 F.3d 1241, 1247 (11th Cir. 1999).

A copyright owner can prove infringement by either direct evidence or indirect evidence. Absent direct proof, the owner makes a prima facie case of infringement by demonstrating "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *see also Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1232-33 (11th Cir. 2010). The first requirement is satisfied by showing that the work "is original and that the plaintiff complied with the statutory formalities." *Latimer*, 601 F.3d at 1233 (internal marks

omitted). The statute provides that, in a judicial proceeding, a certificate of registration made before or within five years after first publication of the work" amounts to "prima facie evidence of the validity of the copyright and the facts stated in the certificate." 17 U.S.C. § 410(c). Therefore, if the plaintiff produces a certificate of registration showing compliance with the statute, "the burden shifts to the defendant to establish that the work in which copyright is claimed is unprotectable (for lack of originality)," *Latimer*, 601 F.3d at 1233 (internal marks omitted), or is "unworthy of copyright protection," *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996). The second requirement – showing the defendant copied constituent elements that are original – may be proven by demonstrating that the defendant had access to the protected work and also that the alleged infringing work is substantially similar to the protected original elements of the work. *Bateman*, 79 F.3d at 1541. Access may be shown by demonstrating the defendant had a "reasonable opportunity to view" the protected work. *Herzog*, 193 F.3d at 1249. If the plaintiff cannot demonstrate access, copying may nonetheless be established "by showing that the works are strikingly similar." *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1223 n.4 (11th Cir. 2008).

The record in this case reveals numerous disputes of material fact that preclude summary judgment. As to the first requirement – plaintiff's ownership of a valid copyright – HDS does not rely on the statutory presumption of validity but argues that Zirkel's sworn testimony establishes the validity and originality of the copyright. However, the defendants have identified inconsistencies within Zirkel's own testimony that create credibility and factual questions for a jury regarding the originality component of a valid copyright.[1] For instance, despite Zirkel's testimony that he claims copyright protection in the house plan's layout of rooms as a whole, he admitted that not all elements of the plan are original or

---

[1] Defendants also argue that the registration is not entitled to a presumption of validity and that there are irregularities in the supplementary registration, which purported to change the nature of the work from a technical drawing to an architectural work. Because plaintiff is not relying on the presumption of validity that arises from a certificate of registration, and because defendants have not moved for summary judgment, it is not necessary for the court to address either the statutory presumption or the validity of the supplementary registration at this time.

Case No. 3:09cv140/MCR/MD

unique and that the split floor plan is not original. *Cf. Beal v. Paramount Pictures, Corp.*, 20 F.3d 454, 459 (11th Cir.), *cert. denied*, 513 U.S. 1062 (1994) (noting defendant may be entitled to judgment "if the similarity between the works concerns only noncopyrightable elements"). Therefore, the court concludes that factual issues remain regarding HDS's ownership of a valid copyright.

With regard to the second element, which requires a showing that the defendants copied constituent elements of the work that are original, disputes of material fact also exist. HDS asserts that the record contains indirect evidence of copying, through "proof of access to the copyrighted work and probative similarity," from which factual copying may be inferred. *Bateman*, 79 F.3d at 1541 (internal marks omitted). HDS would have the court infer access from the defendants' "reasonable opportunity to view" its protected work, *see Herzog*, 193 F.3d at 1249, which HDS asserts is undisputed on this record because its artist conceptual drawing was widely available through publication in the area where the defendants resided. Specifically, HDS asserts that by August of 1995, when the defendants created their first house plan, the HDS-2089 plan "was being published nationally and in the area in which the Stewarts lived and built the first house." (Doc. 67, at 9.) HDS asserts the plan had been published in two magazines from 1994-95 and had been marketed in mailings throughout northwest Florida and in stores such as Lowe's and Home Depot. Zirkel states in his affidavit, "Any builder on that list and any builder who was a member of the Florida Builders Association was mailed multiple magazines that depicted the 2089 in the early 1990s." (Doc. 68-1, at 4.) Zirkel also states that HDS-2089 had been built in the area of the Stewarts' houses. HDS asserts that additionally, defendants admitted they looked at magazines and other houses. HDS argues these circumstances demonstrate a reasonable opportunity to view or copy.

Viewing the evidence in the light most favorable to the nonmoving parties (the Stewarts), the court cannot find access as a matter of law on this record. While the Eleventh Circuit regards a "reasonable opportunity to view" a protected work as access, *Herzog*, 193 F.3d at 1249, it also stresses that a finding of access cannot be based on

speculation or conjecture, *see id.* at 1252.[2]  Contrary to HDS's assertion, the deposition transcripts cited do not include an admission by the defendants that they looked at plans published in magazines.  Keith Stewart explained in his deposition that they attended open houses and walked through other houses in the Destin, Florida, area for ideas, and he specifically denied looking at a magazine or plan; Christine testified that she looked at photos, attended open houses, and drove through neighborhoods for ideas.  There is also no evidence that the defendants, Krauss, or any builder associated with them had been on the mailing list or received an HDS publication containing the plan.  Although Zirkel said there was an HDS-2089 house built in the defendants' area, he listed only one in Destin, Florida, and provided no address or indication of its proximity to the Stewarts' houses.  The court concludes that it would be speculation to infer access as a matter of law on this record in light of the material disputes of fact on the issue.[3]

Assuming access could be inferred from this record, the court would be required to consider whether the allegedly infringing work is substantially similar to the protected copyrightable elements of the work allegedly infringed.  *Intervest Const., Inc. v. Canterbury Estate Homes, Inc.*, 554 F.3d 914, 920 (11th Cir. 2008).  When an architectural work is at issue, as here, the "substantially similar" analysis is somewhat tailored.  The question is "whether a reasonable jury could find the competing designs substantially similar at the level of protected expression."  *Oravec*, 527 F.3d at 1223 n.4.  The Copyright Act's

---

[2] The cases cited by plaintiff from other circuits are inapposite factually and procedurally.  HDS relied on *Autoskill, Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1490 (10th Cir.), *cert. denied*, 510 U.S. 916 (1993), for the proposition that a plaintiff meets his burden to prove access by showing a "reasonable opportunity to view," but the discussion in that case indicates that a "reasonable opportunity to view" is merely an appropriate standard for purposes of shifting the burden of production to defendant.  Also, HDS cited *Robert R. Jones Assocs., Inc. v. Nino Homes*, 858 F.2d 274, 277 (6th Cir. 1988), for the proposition that "access merely means an opportunity to view the protected material," but that case is distinguishable on its facts– the court there found following a trial that the plaintiff had "clearly proven" access because a photocopy of the design was found in defendant's drafting firm's files.  Neither of these cases involved a summary judgment context or an assertion that infringement was established as a matter of law on a presumption of access, as HDS asserts.

[3] Additionally, where access cannot be shown, copying may be established "by showing that the works are strikingly similar."  *Oravec*, 527 F.3d at 1223 n.4.  The court concludes that questions of fact remain on this issue as well, as discussed below.

Case No. 3:09cv140/MCR/MD

definition of "architectural work" includes "the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features." 17 U.S.C. § 101. Thus, standard architectural features or concepts are not copyrightable but "an architect's original combination or arrangement of such elements may be." *Intervest*, 554 F.3d at 919. This is similar to a "compilation" work, which is "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. Only the compiler's choices as to selection, coordination, or arrangement are eligible for copyright protection; architectural copyright protection in a "compilation" is therefore considered to be "thin." *Intervest*, 554 F.3d at 919. For this reason, when comparing two architectural floor plans, "modest dissimilarities are more significant than they may be in other types of art works." *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, No. 09-80918-civ, 2010 WL 3943550, at *15 (S.D. Fla. 2010) (quoting *Howard v. Sterchi*, 974 F.2d 1272, 1276 (11th Cir. 1992), which held that even though floor plans were visually similar and the layout generally the same, the dissimilarities were significant in roof lines, windows, and dimensions).

HDS argues that the record demonstrates substantial similarity of protectable elements as a matter of law and lists a host of similarities between HDS-2089 and defendants' house plans in support. Defendants, on the other hand, list several small differences between the two plans in the area of protectable expression, such as ceiling heights, door placements, elevations, and roof lines. Thus, dissimilarities exist, and the question of how the protectable elements between HDS-2089 and defendants' house plans compare is a question of fact for the jury to resolve.[4] Furthermore, "[p]roof of access and

---

[4] Because the defendants have not moved for summary judgment on the issue of non-infringement, the court deems it unnecessary to chronicle every similarity and dissimilarity in this order. The Eleventh Circuit has recognized that summary judgment of *non-infringement* may be appropriate in cases where "access has been established, the crucial issue is substantial similarity," and, although there is "substantial similarity with respect to the non-copyrightable elements of the two works compared," there is "substantial dissimilarity" with regard to the protectable elements. *Intervest*, 554 F.3d at 919 (citing *Oravec*, 527 F.3d at 1223; *Beal*, 20 F.3d at 459-60). In this case, the pending motion filed by plaintiff seeks a judgment of *infringement* as a matter of

substantial similarity raises only a presumption of copying which may be rebutted . . . with evidence of independent creation." *Calhoun v. Lillenas Publ'g.*, 298 F.3d 1228, 1232 (11th Cir. 2002), *cert. denied*, 539 U.S. 903 (2003). The defendants have presented evidence, through their own testimony and that of Krauss, that they independently created their plans, which plaintiff disputes.[5]

Because questions of material fact remain on the substantive issues of liability, it would be inappropriate and premature to grant summary judgment as to damages. Whether elements of profit "are attributable to the infringement" or "attributable to factors other than the copyrighted work," 17 U.S.C. § 504(b), is a "highly specific factual inquiry[,] appropriately left for the fact-finder." *Thornton v. J Jargon Co.*, 580 F. Supp. 2d 1261, 1280 (M.D. Fla. 2008). Defendants will have an opportunity to present their disputed facts regarding the amount of damages and profit if liability is established. Summary judgment will not be granted on this issue.

Defendants have alleged twelve affirmative defenses, and HDS argues it is entitled to summary judgment on each. "An affirmative defense is one that admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification or other negating matters." *Dawes-Ordonez v. Forman*, No. 09-60335-civ, 2009 WL 3273898, at *1 (S.D. Fla. 2009) (citing *Royal Palm Sav. Ass'n v. Pine Trace Corp.*, 716 F. Supp. 1416, 1420 (M.D. Fla. 1989)). The first affirmative defense states that defendants had an express or implied license or permission to use the HDS-2089 plan, and the fifth affirmative defense raises the issue of ratification. Defendants concede that these are not viable defenses in this suit, and accordingly, HDS is entitled to judgment as a matter of law on them.

---

law, but defendants have listed many dissimilarities which the court concludes create questions of fact, precluding a finding of infringement as a matter of law.

[5] For the same reason, HDS is not entitled to a summary judgment of infringement regarding defendants' second house plan, which HDS claims is an unauthorized derivative work of the first allegedly infringing plan.

Case No. 3:09cv140/MCR/MD

The third affirmative defense is that plaintiff's claim is barred by the statute of limitation. The Copyright Act provides a three-year statute of limitation that runs from the time the claim accrued. 17 U.S.C. § 507(b). The parties both assert that a copyright cause of action accrues "when a plaintiff knows or, in the exercise of reasonable diligence, should have known about an infringement."[6] *Calhoun*, 298 F.3d at 1236 (Birch, J., specially concurring). HDS asserts there is no evidence from which to find that Zirkel knew of the alleged infringements prior to April 5, 2006, which was within three years of April 1, 2009, when HDS filed suit. Defendants assert Zirkel should have known of a potential infringement possibly a year earlier based on his deposition testimony that more than one person called his office to tell HDS of potential infringements in the Destin area and that he traveled to Destin within a year of when Sater had made such a statement to him. (Doc. 77-3, at 9; Zirkel Depo. at 46.) Therefore, defendants have presented evidence of a material dispute of fact regarding when Zirkel should have known about the alleged infringements, and the court will deny summary judgment on this affirmative defense.

Defendants raised defenses of laches, waiver, and estoppel in their fourth affirmative defense. The Eleventh Circuit has stated that there is a presumption against permitting a defense of laches in a copyright infringement suit – "there is a strong presumption that a plaintiff's suit is timely if it is filed before the statute of limitations has run," and "[o]nly in the most extraordinary circumstances will laches be recognized as a defense." *Peter Letterese*, 533 F.3d at 1320. "The defense of laches may be invoked where the plaintiff has unreasonably and inexcusably delayed in prosecuting its rights and where that delay has resulted in material prejudice to the defendant." *Id.* at 1321 (internal

---

[6] There is a split of authority, however, as to when a claim "accrues" under this statute, which the Eleventh Circuit has not squarely addressed. *See Lorentz v. Sunshine Health Prods., Inc.*, No. 09-61529-civ, 2010 WL 3733986, at *4-5 (S.D. Fla. Aug. 27, 2010), *R & R adopted by* 2010 WL 3733985 (S.D. Fla. Sept. 23, 2010); *Thornton v. J Jargon Co.*, 580 F. Supp. 2d 1261, 1284-85 & n.12 (M.D. Fla. 2008). The discovery rule is the prevailing and more lenient view, providing that a copyright infringement cause of action accrues when the owner learns or should have learned of the violation. *Lorentz*, 2010 WL 3733986 at *5; *Thornton*, 580 F. Supp. 2d at 1285. The minority view favors the "injury" rule, which holds that a claim accrues when the infringing act occurs. *See Thornton*, 580 F. Supp. 2d at 1285. The parties here have not urged this court to consider the applicability of the minority view; therefore, the court will follow the majority discovery rule advanced by both parties.

Case No. 3:09cv140/MCR/MD

marks omitted). The Stewarts assert that this case is extraordinary because they paid Krauss to draft the design for their home in 1995, and suit was not filed until 2009, nearly 15 years later. No evidence has been adduced, however, to substantiate a claim that HDS knew of the alleged infringement as early as 1995. Because this is the only argument advanced on this issue and there is no evidence in the record to support it, this case does not involve extraordinary circumstances that would avoid the presumption that the suit is timely if it is found to have been filed within the statute of limitations. The related claim of estoppel arises "when one has so acted as to mislead another and the one thus misled has relied upon the action of the inducing party to his prejudice." *Id.* (internal marks omitted). There is no evidence that plaintiff acted in any way to mislead or induce defendants to their prejudice.[7] Defendants make no argument regarding their defense of waiver. Accordingly, summary judgment in favor of plaintiff is appropriate on defendants' fourth affirmative defense.

HDS seeks summary judgment on defendants' sixth affirmative defense of unclean hands, arguing that there is no basis in fact to support the claim. To prevail on the affirmative defense of unclean hands, the defendant must demonstrate that alleged wrongdoing of the plaintiff is directly related to the claim at issue and that the defendant suffered injury from it. *See Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 450-51 (11th Cir. 1993). The defendants here argue that "Home Design has dirtied its hands by failing to identify third-party authors of the HDS-2089 designs and by seeking to assert rights in common, unprotectable elements contained in the designs." (Doc. 76, at 24.) This argument is taken nearly word-for-word from an order in a 2005 case, *see Home Design Servs., Inc. v. Park Square Enters., Inc.*, 2005 WL 1027370, at *9 (M.D. Fla. 2005), and defendants assert in a footnote that the court there denied HDS's motion for summary

---

[7] Defendants assert that this issue is not ripe for summary judgment because they may be entitled to rely on the court's findings in *Home Design Servs., Inc. v. Turner Heritage Homes, Inc.*, No. 4:08cv344-SPM/WCS (N.D. Fla.), a case pending in a different division of this court. This is a different argument than the estoppel affirmative defense, however. The court agrees that collateral estoppel is not at issue at this point. The court in the *Turner Heritage Homes* case denied summary judgment motions, and the issues have not yet been finally resolved at trial.

judgment on the unclean hands defense on this same argument. To resist a properly supported motion for summary judgment, however, a party cannot rely on its pleadings or evidence submitted in another case. To assert a fact, a party must cite to record evidence or show that the materials cited to do not establish the absence of a material fact. Fed. R. Civ. P. 56(c). In *Park Square*, on which defendants rely, the court denied summary judgment on the unclean hands defense after determining that the record in that case contained material issues of fact regarding whether HDS had committed wrongs that would preclude it from recovering on its claims. *Park Square*, 2005 WL 1027370, at *10. No such evidence has been presented in this case. There is no evidence suggesting that HDS failed to identify third-party authors. Also, defendants' assertion of wrongdoing by HDS's reliance on unprotectable elements in the design may ultimately preclude HDS from recovering on its claim, but it does not suggest the type of "wrongdoing" that would support this equitable defense. For this reason, summary judgment will be granted on defendants' sixth affirmative defense.

Finally, the court will grant summary judgment on the remaining affirmative defenses as well. Defendants argued that their affirmative defenses based on good faith purchaser (second affirmative defense); that they did not act in bad faith (seventh affirmative defense); failure to timely register (eleventh affirmative defense); and innocent infringement (twelfth affirmative defense) were advanced in an effort to limit their liability for potential statutory damages. *See* 17 U.S.C. § 504(c). Plaintiff now asserts it has elected not to seek statutory damages in this case. Therefore, the court agrees with plaintiff that these defenses have no bearing on any claim. Defendants concede that their eighth, ninth, and tenth affirmative defenses, which allege respectively that the copyright is invalid, not original, and that substantial similarity is lacking, while valid defenses to the plaintiff's claim on the merits, are not appropriately labeled as affirmative defenses.[8] *See Dawes-Ordonez*,

---

[8] Defendants also argue that no infringing conduct has been established as to defendant Christine Stewart. However, defendants did not move for summary judgment, and in the conclusion of their response in opposition to summary judgment, they request only that the court deny the plaintiff's motion for summary judgment, with the exception of the conceded affirmative defenses. Thus, the court will not consider this argument.

Case No. 3:09cv140/MCR/MD

2009 WL 3273898, at *1 (stating an affirmative defense admits to the complaint but avoids liability by stating new allegations of excuse or justification); *see also* Black's Law Dict. at 482 (9th ed. 2009).

Accordingly, HDS's motion for summary judgment (doc. 67) is **GRANTED** in part, and **DENIED** in part as follows: Summary judgment is granted in favor of plaintiff HDS on defendants' first, second, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, and twelfth affirmative defenses;[9] in all other respects, plaintiff's motion for summary judgment is denied.

**DONE AND ORDERED** on this 28th day of February, 2011.

s/ *M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

---

[9] Defendants' third affirmative defense based on the statute of limitation survives summary judgment for reasons stated within the order.